From Albert Strite, Chambersburg, Pa.

## Reading National Bank & Trust Company's Account

*George B. Balmer* and *William McK. Rutter*, for accountant.
*Joseph R. Dickinson* and *Samuel E. Bertolet*, for exceptants.

MARX, P. J., January 26, 1935.—The question here proposed is whether a trust resting in a corporate mortgagee, trustee of real estate, for bondholders, is a trust inter vivos, under the Act of June 26, 1931, P. L. 1384.

Aaron Potruch, on November 15, 1930, executed 130 bonds of an aggregate face value of $115,000, all similar in tenor, payable "to the registered holder thereof" at the respective times in said bonds stipulated, and delivered them to The Reading National Bank & Trust Company, trustee for bondholders. The mortgage, collaterally securing the bonds, conveyed to said trustee property known as Albright Court Apartments, situate in the City of Reading, Berks County. The trust imposed by the mortgage provided, inter alia, that, in the event of default of the payment of any of said bonds at maturity, payment of taxes when due, or default in any other duty imposed by the bonds and the mortgage, for a period of three months, the principal of all bonds secured thereby should become immediately due and payable. The trustee was, thereupon, authorized to enter upon the premises conveyed, possess them, collect and use the rents, issues and profits thereof, pay taxes and other necessary charges, and apply the net balance to payment of or on account of the interest accrued on said bonds. In the event of such default, the trustee was given the further authority to enter upon the premises and sell them at public auction, without preliminary proceedings, or to proceed by suing out a writ of sci. fa., prosecuting the same to judgment, execution and sale, and to apply the proceeds of such sale against liabilities under the trust. In the event of such default the written request of a majority in interest of the holders of outstanding bonds to exercise

the aforesaid powers, or to take the proper proceeding at law or in equity to enforce the rights of the bondholders, became mandatory to the trustee and required him to proceed. The trustee under the mortgage, having entered upon and taken possession of the premises conveyed, filed its account of the income received and the expenditures made on account of the trust, in this trust, and requests distribution of the balance shown.

The jurisdiction of this court to pass upon the account and to make distribution has been challenged and must be first determined.

The Act of June 26, 1931, P. L. 1384, does not specifically define "trusts inter vivos". Section 1 extends the jurisdiction of the orphans' court to embrace:

"(n) The control, removal, discharge, and settlement of accounts of trustees of trusts inter vivos;

"(o) The control, removal, discharge, and settlement of accounts of trustees of life insurance trusts, whether taking effect during the lifetime or at or after the death of the insured or settlor."

Life insurance trusts are, properly speaking, "trusts inter vivos". They are created by one having an insurable interest, on the proceeds of insurance on his life or the life of another. Although the proceeds of the insurance may reach the trustee only after the death of the insured, the trust is immediately effective. Having thus segregated a particular type of trust inter vivos, it is not likely that the legislature intended by the contemporaneous designation of "trusts inter vivos", all trusts having origin in the act of a living person. The designation must be understood in a more special or limited sense and, in ascertaining that sense, resort must be had to the disclosed intent of the lawmaking authorities.

The Governor of the Commonwealth, approving the legislation, said:

"Before approving this bill, I sought the views of the judges of the Orphans' Courts of the Commonwealth. There was almost an even division of opinion on the subject. A number of the judges feel that the work of the Orphans' Court is and should remain highly specialized and that this bill is not in line with the existing work of the court. The other view is that supervision over trusts inter vivos and life insurance trusts comes within the field in which Orphans' Courts are especially qualified. After carefully weighing both views, I am inclined to agree with that favoring approval."

Statutory amendments must always be interpreted in the light of existing law, the mischief prevailing thereunder and the change sought. General words, under this test, must be limited in meaning to the necessity and fitness of the situation and must not be construed to amend the law beyond. The situation at the time of this enactment may be illustrated by the facts underlying Douglas's Estate, 303 Pa. 227 (see Shaffer's Estate, 21 D. & C. 90, 91), and our own case of Althouse's Estate, 23 Berks 192. In the former case the settlor, under an irrevocable deed of trust, duly recorded, directed distribution of the estate according to a will theretofore executed. The will was subsequently probated. This was followed by an appeal from the probate, the petition alleging a loss of testamentary character in the will through its absorption by or merger with the deed of trust. It was held that the petition on appeal involved an interpretation of the deed of trust and of this the orphans' court had no jurisdiction. Quoting from the opinion of the court below, the Supreme Court said, p. 231:

" 'Litigation, if any, during the lifetime of the parties would have properly been instituted in a court having jurisdiction of the parties and subject-matter, and by the same token that jurisdiction continues until the life of the trust

is at an end, and the affairs of the trust completed and adjudicated. This is true whether one or both of the parties are living or dead.' "

A fair picture of the confusion and duplication of litigation resulting from the state of the law then existent, is furnished in Althouse's Estate, supra. Althouse executed concurrently a will and a deed of trust. By will, he gave the residue of his personal estate to the trustee under the deed of trust, to be administered and distributed under the terms of the deed. The original corpus of the trust was $8,000. On the first accounting of the executors, $114,677.08 additional was decreed to the trustee. The trust terminated at the son's death. On a second account, a principal balance of $1,327.70 was presented for distribution. For reasons appearing to warrant such a course (23 Berks 206) we consented to make direct distribution to those entitled under the deed of trust. This involved an interpretation of that instrument, evidently without jurisdiction, but at the request of all parties in interest and to the saving of circuitous accounting and expense to the estate. It is evident that much time and some expense might have been saved by concurrent accounts of the executors and trustees, in the orphans' court, with prompt transfer of balances and adjudication without reference to auditors. It was apparently to answer such situations that jurisdiction was extended to this type of trusts inter vivos.

Whether one disposes of his property by will, effective at death, or by agreement or deed, effective in his lifetime, his dispositions are usually in identical terms, and fall under the same rules of interpretation and construction. Definition of estates vesting, limitation, and lapsing of gifts, and all questions lying in the broad field of these, under either disposition, are subject to the same control.

That is the special field of the orphans' court and it would seem desirable and tending to uniformity of interpretation, to have in such cases available the offices of that court.

The instant case does not lie in that field. Until default, the trust is largely a passive or dry trust. In the event of default, the trustee may and, under stipulated circumstances must, act for the bondholders. It may take possession of the pledged real estate and sell under terms; it may proceed, by writ of sci. fa. to judgment and then to sale. It may proceed, in law or in equity, to enforce the rights of the bondholders. It must account for proceeds of sale. Except accounting, none of these powers or duties fall within the special field of the orphans' court. That court, within the lines of its statutory jurisdiction, has the powers of a court of equity, but it is not a court of general equitable jurisdiction. It does not know the writ of sci. fa., the affidavit of defense, nor pleadings incident thereto. Other rights given and duties imposed are not enforceable under its powers. It is given no authority in these respects and none attaches by implication. Had the legislature intended to confer jurisdiction in this broad, general and important field, it would have done so in unmistakable terms and would have granted powers suitable to the enforcement of the rights arising therein. Accounting and distribution alone might be more expeditiously accomplished in the orphans' court, but that alone is not sufficient to warrant a conclusion that such an extension of jurisdiction was intended.

We, accordingly, conclude that this court is without jurisdiction in this matter, and the objection to its jurisdiction must be sustained. The account and petition for audit and distribution are dismissed.